## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LUCAS JUNIOR JOAQUIM,                    *

    Plaintiff,                           *

      v.                               *               Civil No. 1:22-0050-CDA

ROSS BUZZURO, et al.,                    *

    Defendants.                          *

                          * * * * * * *

### MEMORANDUM OPINION

Plaintiff, Lucas Junior Joaquim ("Plaintiff"), brings this suit against the Mayor and City Council of Ocean City ("OC"),[1] the Chief of the Ocean City Police Ross Buzzuro ("Chief Buzzuro"), and an individual, Officer Christian Rodden ("Officer Rodden") (collectively, "Defendants").

Plaintiff commenced this civil suit on January 10, 2022, asserting six causes of action against the Defendants. The basis of Plaintiff's claims arises from Defendant Officer Rodden deploying his police issued taser twice upon Plaintiff on September 26, 2020, in Ocean City, Maryland. ECF 37-1, at 8. Plaintiff claims that Officer Rodden's conduct constituted excessive force, violating his constitutional rights. ECF 37-1, at 11. Plaintiff brings six counts: (1) Deprivation of Civil Rights under 42 U.S.C. § 1983 against Officer Rodden; (2) Battery against

---

[1] Plaintiff named the "Town of Ocean City, Maryland Police Department, a/k/a Mayor and City Council of Ocean City as a Defendant." ECF 1, at 3. Pursuant to Ocean City Charter section C-201, "Mayor and City Council of Ocean City" is the official name of the public body corporate of Ocean City and the Town which has the capacity to be sued in that name. Ocean City, Md. Code Ord. Pt. 1 Title II § C-201. Thus, the Ocean City Police Department is not a legal entity and cannot be sued in such capacity. All claims pertaining to the OCPD will be incorporated into the Mayor and City Council of Ocean City.

Officer Rodden; (3) Negligent Hiring, Training, and Supervision against OC and Chief Buzzuro; (4) False Imprisonment against Officer Rodden; (5) Negligent Hiring, Training, and Supervision against the Ocean City Police Department ("OCPD"); and (6) Negligence against Officer Rodden. ECF 33-1, at 2.

Now pending before the Court are Defendants' Motion for Summary Judgment and Motion in Limine to exclude the testimony of Plaintiff's proffered law enforcement expert Michael Angelo Hodge. ECFs 33, 34. The parties fully briefed the issues and presented oral arguments on April 19, 2024. ECF 41. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the Motion for Summary Judgment, and the Court GRANTS IN PART and DENIES IN PART Defendants' Motion in Limine.

## I.     FACTUAL BACKGROUND

### A.     Undisputed Material Facts

This case arises out of an alleged incident where Officer Rodden, a member of the OCPD, tased Mr. Joaquim twice in Ocean City, Maryland on September 26, 2020. Plaintiff attended a "pop-up" car rally known as H2Oi,[2] which occurs annually in and around Ocean City. Defs.' Mot. for Summ. J. ("Defs.' MSJ"), ECF 33-1, at 2-3; Def. Ex. 1, Joaquim Dep., Tr. 27:5-15. At approximately midnight, Plaintiff and another individual, later identified as Dylan Duvall ("Mr. Duvall"), engaged in a physical altercation during a situation described by Plaintiff and other witnesses as "chaos" and "hectic."[3] Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s MSJ Opp'n"), ECF

---

[2] Defendants maintain that this is an abbreviation for water-cooled, imported automobiles. Defs.' MSJ, at 2-3.

[3] Plaintiff alleges that the exact location of where the altercation commenced is unknown, but a witness stated that the verbal dispute turned physical somewhere in the proximity of a BB&T Bank, where an individual with a knife began to issue threats and attack people. Pl.'s MSJ Opp'n, at 1 (referring to Defs.' Ex. 8, Everett Dep., Tr. 19:8-10).

37-1, at 1; Defs.' MSJ, at 2.  The altercation occurred in or along the travel lanes of Costal Highway in Ocean City.  Defs.' MSJ, at 3; Pl.'s MSJ Opp'n, at 2.  Officer Rodden, initially responding to an incident down the street, observed a large crowd gathering around Plaintiff and Mr. Duvall, and ran on foot to the scene of the active brawl.  Defs.' MSJ, at 15.

> ### 1.   *Video of the incident*

Defendants submit a forty-eight second video taken by an onlooker at the scene of the incident.  *See* Defs.' Ex. 5 (Video).  Because neither party disputes the accuracy of the submitted video, *see* ECF 41 (Hr'g), the Court summarizes its depictions (but not necessarily any inferences drawn therefrom) as undisputed.[4]  In the first ten seconds of the video Plaintiff, Mr. Duvall, and a third individual later identified as Patrick Edward Pollack Jr. ("Mr. Pollack"), a purported friend of Mr. Duvall's, can be seen brawling in the street on Costal Highway.  *See* Defs.' Ex. 5; Defs.' MSJ, at 4; Pl.'s MSJ Opp'n, at 1-2.  Other individuals from the crowd can also be seen physically fighting in the road.  Defs.' Ex. 5.  At approximately sixteen seconds, a loud shout can be heard. It is unclear from the video who and what was shouted.  Defs.' Ex. 5, at 0:16.  At approximately eighteen seconds, two seconds after the shouting and the visualization of Officer Rodden and another member of the OCPD, the video depicts Plaintiff and Mr. Duvall abruptly separate.  *Id.* at 0:18.  When OCPD arrive on scene, many members of the crowd are heard yelling "he has a knife" or "knife".  *Id.*  Around the time the officers arrive and Plaintiff and Mr. Duvall separate, Plaintiff faces Officer Rodden and raises his hands, palms facing Officer Rodden so that his hands are about at his head height.  *Id.*  The video depicts Officer Rodden pointing the apparent taser in Plaintiff's direction while Plaintiff has his hands raised.  *Id.*

---

[4] A video "whose accuracy is unchallenged" should be considered at summary judgment.  *Sawyer v. Asbury*, 537 F. App'x 283, 291 (4th Cir. 2013) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007)).

In the same moment that Plaintiff and Officer Rodden are having their interaction, Mr. Duvall runs off and is chased by another member of the OCPD. Defs.' Ex. 5. Mr. Pollack can be seen running off in the opposite direction. *Id.* The video focuses away from Plaintiff for about two seconds, showing a police officer pointing what is seemingly a taser at Mr. Duvall and subduing him. *Id.* At approximately twenty-two seconds, the video pans back to Plaintiff, who is lying on his left side with Officer Rodden standing over him. *Id.* at 0:22. The video then pans back and forth between the two officers, Plaintiff, and Mr. Duvall for about ten seconds. *Id.* Officer Rodden then takes Plaintiff to where the other police officer is handcuffing Mr. Duvall. *Id.* During this time, members of the large crowd are pointing to Mr. Pollack (standing near Mr. Duvall and the other officer) and yelling what sounds like "knife" or "he's got a knife." *Id.* Mr. Pollack then runs off as the crowd continues to point and yell "knife." *Id.* The remainder of the video shows OCPD officers handcuffing both Plaintiff and Mr. Duvall while they lie face down on the pavement. *Id.*

### 2. *OCPD Policies and Training*

The parties also reference certain OCPD policies and procedures regarding use of force, including taser deployment. Defs.' MSJ, at 6; Pl.'s MSJ Opp'n, at 5-6. The written documents appear to speak for themselves, as neither party argues about the accuracy of their contents. Instead, the parties dispute whether Officer Rodden's actions were consistent with policies and training and, if not, whether such deviations demonstrate excessive force.

### B. Disputed Facts Concerning the Incident

While the parties do not challenge the video's accuracy, they offer different accounts about the unclear depictions in the video and inferences to be drawn from the video. *See* Defs.' MSJ, at 2-5; Pl.'s MSJ Opp'n, at 1-8. The primary difference is in the interaction between Plaintiff and Officer Rodden upon the latter's arrival. Defendants rely heavily on Officer Rodden's account,

4

which arises in large part from a "Use of Force Report" completed after the incident and his deposition. Defs.' MSJ, at 6-7; Defs.' Ex. 2, (Rodden Dep.); Defs.' Ex. 10, (Incident Report). The Use of Force report, Officer Rodden explains, describes that when he arrived on scene, Plaintiff "was actively attempting to push Duvall west which would have put him into the traffic lanes." Defs.' Ex. 10, at 6. According to Officer Rodden, he drew his taser and targeted Plaintiff while Plaintiff and Mr. Duvall were physically engaged. *Id.* Officer Rodden maintained that he targeted Plaintiff's upper right back and the lower left back; issued a warning of "taser, taser, taser"; and pulled the trigger. *Id.* From Officer Rodden's perspective, as soon as he pulled the trigger, "[s]imultaneously," Plaintiff released Mr. Duvall and turned and faced him. *Id.* One taser probe missed Plaintiff and another struck him in his lower abdomen; which failed to incapacitate Plaintiff. *Id.* Officer Rodden stated he ordered Plaintiff to the ground and that Plaintiff began "hopping backwards shouting 'No.'" *Id.* Officer Rodden maintained that he ordered Plaintiff to the ground a second time; when Plaintiff did not comply, the officer deployed his taser a second time. *Id.* This second deployment incapacitated Plaintiff, causing him to fall backwards, and Officer Rodden arrested him. *Id.*

In discovery for this case, Officer Rodden expounded on this account, stating that when he deployed his taser a second time, he believed that Plaintiff had assumed a "fighting stance" while facing the officer. Defs.' Ex. 2, Rodden Dep., Tr. 57:9-17. This detail did not appear in the Use of Force Report and was offered for the first time in written discovery. *See* Defs.' Ex. 10, at 6 (Incident Report); Defs.' Ex. 13, at 6-7 (Rodden Answer to Interrog. No. 17).

In his deposition, Plaintiff described a materially different encounter, explaining he was not warned before either taser deployment. Pl.'s Ex. 1, Joaquim Dep., Tr. 104:18-105:11. He recalled that when he first saw the officers, the taser was already pointed at him; from his

perspective, the arrival of the OCPD and his being tased occurred quickly. *Id.* at Tr. 73:14-24; 71:9-12. Plaintiff explained that he got up from the ground during his altercation with Mr. Duvall and, while collecting himself, he saw Officer Rodden. *Id.* at Tr. 151:23-24, 152:1-15. At this moment, he felt a rush of adrenaline from being stabbed, saw that something was pointed at him, and he threw his hands up in the air. *Id.* Plaintiff claimed that after he was tased and on the ground, he informed Officer Rodden that Mr. Pollack had a knife and that he [Plaintiff] was trying to protect himself and his friends. *Id.* at Tr. 103:1-4. After the incident, Plaintiff learned he had suffered a stab wound from Mr. Pollack but did not realize this until several hours after his arrest. *Id.* at Tr. 77:4-7. Plaintiff denied ever clenching his fists or attempting to walk away from, attack, or approach Officer Rodden. *Id.* at Tr. 150:7-15.

### C.  Plaintiff's Expert, Mr. Michael Hodge

Plaintiff designated Mr. Michael A. Hodge, CPP, JD, ("Mr. Hodge"), as an expert witness to provide testimony and opinions regarding the police practice field. ECF 34-3, at 1. Defendants move to have Mr. Hodge excluded from testifying at trial as an expert or other witness for Plaintiff. ECF 34, at 1. During discovery, Plaintiff identified his intent to have Mr. Hodge testify to "[t]he standard of care for police officers in preventing and responding to assaults through de-escalation methods and when appropriate the use of non-lethal force[.]" *See* ECF 34-2, Def. Ex. A, at 2.

## II.  ANALYSIS

For the reasons stated below, the Court grants in part and denies in part Defendants' Motion for Summary Judgment. Material disputes of fact exist as to Plaintiff's excessive force and battery claims. Certain counts are no longer pursued by Plaintiff, and thus are dismissed by concession. *See* ECF 41. Plaintiff's negligence claim, as pled, is defeated by qualified immunity under state

law.  The Court grants in part Defendants' Motion in Limine concerning testimony of Michael Hodge, to the extent Plaintiff seeks to elicit certain opinions on the ultimate issue for the factfinder.

### A.      Defendants' Motion for Summary Judgment

#### 1.      Legal Standard as to Summary Judgment

Under Federal Rules of Civil Procedure 56(a), a court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); s*ee Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.  In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see Scott v. Harris*, 550 U.S. 372, 378 (2007).

Summary judgment is appropriate where the evidence "is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 252.  When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material facts.  *Emmett v. Johnson*, 532 F.3d 291, 297 (4th

Cir. 2008).  However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

In considering a summary judgment motion, the court does not make credibility determinations.  *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018).  The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  Therefore, in the face of conflicting evidence, such as competing affidavits or other testimony, summary judgment ordinarily is not appropriate; the factfinder must resolve factual disputes, including matters of witness credibility.  *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  That said, "a party's self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment."  *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658-59 (4th Cir. 2020); *see also Felty*, 818 F.2d at 1128 ("Unsupported speculation is not sufficient to defeat a summary judgment motion.").

Where a court considers an unchallenged video at summary judgment, *see Sawyer*, 537 F. App'x at 291, and the uncontested "video footage does not clearly support" the defendants' "account," the video is viewed in the light more favorable to the plaintiff at summary judgment. *Brooks v. Johnson*, 924 F.3d 104, 108, 115 (4th Cir. 2019) (considering video footage in the context of an Eighth Amendment excessive force claim).

      *2.  Defendants' Motion for Summary Judgment is **<u>Denied</u>** as to <u>Counts I and II</u> and **<u>Granted</u>** as to <u>Counts III through VI.</u>*

For the reasons stated below, the Court DENIES summary judgment as to Count I and II due to a genuine dispute of material facts.  As to Count III, IV, V, the Court GRANTS summary judgment because Plaintiff no longer pursues those claims.  Finally, as to Count VI summary

judgment is GRANTED because Officer Rodden enjoys public official immunity for simple negligence; however, the Court will permit Plaintiff to seek amendment of a claim for gross negligence within twenty-one (21) days of this opinion, if he so chooses.

As an initial matter, Plaintiff advised the Court during oral argument that he no longer pursues Count III, IV, and V. *See* ECF 41. As such, the Court GRANTS Defendants' Motion for summary judgment pertaining to those Counts and will not further address them in this opinion.

       a. <u>Summary Judgment is **Denied** as to Count I (Deprivation of Civil Rights under 42 U.S.C. § 1983)—the excessive force claim.</u>

The Court denies the Motion as to Count I because there is a genuine dispute of material facts as to the reasonableness of the force used by Officer Rodden. Plaintiff asserts an excessive force claim under Title 42 U.S.C. § 1983, the federal statutory remedy for deprivation of rights secured by federal law. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Section 1983 "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). To prevail, he must prove that the charged state actor (1) deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of state law as outline in the statute. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001). "The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245.

Plaintiff alleges a violation under his Fourth Amendment right to be free from excessive force and Defendants, at the hearing, agreed that this constitutional right for Plaintiff exists. Pl.'s MSJ Opp'n, at 12. Having identified the constitutional right at issue, the next step when analyzing a § 1983 claim is examining the precise scope of the Fourth Amendment guarantee and respective claims for immunity. *Safar*, 859 F.3d at 241.

i.   The standard for proving excessive force.

The Fourth Amendment bars police officers from using excessive force to effectuate a seizure. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003); *see Graham*, 490 U.S. at 395. Courts evaluate a claim of excessive force based on an "objective reasonableness" standard. *Graham*, 490 U.S. at 399. An officer's subjective intent or motivation is irrelevant at this step. *Id.* at 397. Courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Jones*, 325 F.3d at 527 (quoting *Graham*, 490 U.S. at 396). In doing so, courts focus on the facts and circumstances of each case, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The inquiry into the reasonableness of the force also requires a court to "consider the facts at the moment that the challenged force was employed" and "with an eye toward the proportionality of the force in light of all the circumstances." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015). A court examines the totality of the circumstances to determine whether the force used was objectively reasonable. *See id.*

"Artificial divisions in the sequence of events do not aid a court's evaluation of objective reasonableness." *Ray*, 781 F.3d at 101 (quoting *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005)). Thus, the Fourth Circuit has cautioned courts against using "a segmented view of the sequence of events" where "each distinct act of force becomes reasonable given what [the officer] knew at each point in th[e] progression." *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir.1994). "[F]orce justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Waterman*, 393 F.3d at 481. The better approach in a case is to view the reasonableness of the force "in full context, with an eye toward

the proportionality of the force" in light of the totality of the circumstances. *Id.*; *Yates v. Terry*, 817 F.3d 877, 883 (4th Cir. 2016).

ii.    The availability of qualified immunity to excessive force claims.

Defendants argue that based on the undisputed facts and applicable law, Officer Rodden is entitled to summary judgment under qualified immunity. Defendants urge that qualified immunity is applicable because Officer Rodden did not commit a Fourth Amendment violation, as he did not use excessive force and his "actions and decisions were objectively reasonable." Defs.' MSJ, at 8, 17. Plaintiff opposes the application of qualified immunity, contending it depends on the resolution of disputed facts. Pl.'s MSJ Opp'n, at 20.

Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry is two-fold. The Court must consider: (1) whether the facts established by the plaintiff "make out a violation of a constitutional right;" and if so (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 194 (2001)). A negative determination on either prong entitles the officer to qualified immunity. *See, e.g.*, *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 547 (4th Cir. 2010). The Court must undertake this inquiry viewing the facts "in the light most favorable to the party asserting the injury." *Mansoor*

11

*v. Trank*, 319 F.3d 133, 137 (4th Cir. 2003) (internal quotations and citation omitted).  Although the Court may consider these twin prongs in the order which best suits "the circumstances in the particular case at hand," *Pearson*, 555 U.S. at 236, it is preferable to consider first whether the officer's conduct violated the plaintiff's particular constitutional right because such a determination advances the discourse as to whether the right is clearly established.  *Saucier*, 533 U.S. at 201; *see Pearson*, 555 U.S. at 236 (modifying the *Saucier* approach such that lower courts may use their discretion to decide the sequence in which to conduct the two steps of qualified immunity analysis).

With respect to the second prong of the qualified immunity analysis, a right is clearly established if the contours of the right "are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'"  *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The "clearly established" analysis must focus on the law in place at the time of the alleged misconduct.  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotations and citation omitted); *see Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).

        iii.    <u>There are genuine disputes of material fact concerning reasonableness of force and, necessarily, applicability of qualified immunity.</u>

Having the discretion to address either of the qualified immunity prongs first, the Court concludes that Plaintiff's claim involves a clearly established right.  At the hearing, both parties agreed that the clearly established right element is satisfied.  *See* ECF 41.  Moreover, it has long been "clearly established that a police officer [is] not entitled to use unnecessary, gratuitous, and disproportionate force" against an individual who does not actually pose a threat to the officers' safety.  *Jones*, 325 F.3d at 534.

The Court turns to whether facts established by Plaintiff "make out a violation of a constitutional right[.]" *Pearson*, 555 U.S. at 232.  While qualified immunity should be decided at the earliest possible phase of litigation, disputed factual issues may preclude such a determination until trial.  *See e.g., Burno-Whalen v. Maryland*, No. GJH-15-564, 2016 WL 1259556, at *5 (D. Md. Mar. 28, 2016); *see Hicks v. Ferreyra*, 965 F.3d 302, 308 (4th Cir. 2020); *Gray v. Torres*, No. WDQ-08-1380, 2009 WL 2169044, at *2 (D. Md. July 17, 2009) (noting that, in the summary judgment context, "the qualified immunity question can . . . at times require factual determinations respecting disputed aspects of [a defendant's] conduct . . . . The importance of summary judgment in qualified immunity cases does not mean . . . that summary judgment doctrine is to be skewed from its ordinary operation to give substantive favor to the defense, important as may be its early establishment.").  To evaluate whether qualified immunity is applicable in this case, the Court must also analyze whether excessive force is found.

The Court agrees with Plaintiff's position in that several material facts remain disputed. The video—the accuracy of which is undisputed—appears to show Plaintiff stop physically attacking Mr. Duvall and raise his hands, with his palms facing Officer Rodden.  *See* Defs.' Ex. 5. Plaintiff did not run and did not have a weapon in either hand.  *See id.*  There are, of course, disputes concerning what the video depicts: for example, whether Plaintiff assumed what Defendants call "a fighting stance" or whether Plaintiff faced Officer Rodden, hands raised, and did not resist.  There are also issues not depicted clearly or at all in the video.  These include whether Plaintiff stopped engaging in the physical altercation when OCPD arrived on scene or he remained engaged, as Officer Rodden's report and deposition suggest; whether Officer Rodden's conduct deviated from OCPD's policy regarding use of force, as he was required to reassess the

situation as it progressed and changed;[5] whether, as Plaintiff testified, Officer Rodden failed to present his taser when he arrived on scene and deployed his taser for a second time without any warning; whether the time between the first and second taser deployments was unreasonably short and failed to account for material changes (e.g., the Joaquim-Duvall altercation stopped and Plaintiff submitted to commands); whether Officer Rodden targeted Plaintiff in an inappropriate area—his upper chest; and whether "passive resistance," if Plaintiff engaged in such, warranted a second taser deployment.

A reasonable factfinder could conclude that Plaintiff only passively resisted, if he even resisted at all, or that Defendant's actions violated relevant policies and practices regarding taser deployment.  In doing so, a "reasonable jury could question," and readily reject, "the need for the 'amount of force'" deployed in this situation.  *Tserkis v. Baltimore Cnty.*, No. ELH-19-202, 2021 WL 3129325, at *16 (D. Md. July 23, 2021) (internal citations omitted).  Accordingly, a reasonable factfinder could conclude that Officer Rodden's conduct constituted constitutionally impermissible excessive force.  *See Bailey v. Kennedy*, 349 F.3d 731, 744 (4th Cir. 2003) (collecting cases).

On the other hand, within the totality of circumstances and under the objectively reasonable officer's standard, a jury may find that Officer Rodden did not use excessive force.  *Waterman*, 393 F.3d at 481; *Yates*, 817 F.3d at 883.  Specifically, the jury could credit the Defendant's statements and interpretations of resistance, evasion, and ongoing threat warranting certain force.

---

[5] The Defendant's use of Force Policy states: "1. Display: The visible presence of the ["conducted electric weapon"] CEW outside of the holster. 2. Target: The pointing of an armed CEW at a subject. 3. Deploy: The use of the CEW to deliver an electrical energy charge either by firing probes, or by direct contact."  Defs.' Ex. 17, II.D.

But Defendants' contention that Officer Rodden acted objectively reasonable relies on crediting his version of facts, which are disputed.

Although a jury may find one version of the events is more persuasive than the other, the Court cannot and will not make such credibility determinations at this stage. *See Anderson*, 477 U.S. at 255. The question of qualified immunity depends on the resolution of material disputes as to whether Officer Rodden used excessive force and acted reasonably appertaining to the incident in question. *See Yates*, 817 F.3d at 882; *Hicks v. Anne Arundel Cnty.*, No. JKB-20-0022, 2021 WL 4804017, at *5 (D. Md. Oct. 14, 2021) ("[T]he Court of Appeals has recognized that claims of qualified public official immunity usually present questions for the fact-finder."). Accordingly, the Motion must be denied as to Count I.

b. Summary Judgment is **Denied** as to Count II (Common Law Battery).

The parties agree—correctly—that Count II rises and falls with Count I. *See* ECF 41. Under Maryland law, battery is the "unlawful application of force to the person of another." *Snowden v. State*, 321 Md. 612 (Md. 1991). A police officer is not liable for battery for using a reasonable amount of force when effectuating a lawful detention or arrest. *See Ashton v. Brown*, 339 Md. 70, 119 n.24 (Md. 1995); *Hines v. French*, 157 Md. App. 536, 552-53 (Md. Ct. App. 2004) (holding that officers were entitled to judgment as a matter of law on claims of battery, false imprisonment, and false arrest where they had legal justification to arrest the plaintiff). Battery may also occur where state action is unjustified or unlawful. *Williams v. Prince George's County*, 112 Md. App. 526, 554 (1996). If during a valid arrest "an officer uses excessive force, or force greater than is reasonably necessary under the circumstances, the officer may be liable" for battery. *French v. Hines*, 182 Md. App. 201, 265-66 (Md. Ct. Spec. App. 2008) (citation omitted). Thus, a common law battery claim turns on whether the police officer used excessive force. *Id.*;

*cf. Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994) (state battery claim sustained within a federal excessive force claim).

Summary judgment must be denied as to Count II because a claim for battery turns on whether Officer Rodden used excessive force. As explained above, there exists a genuine dispute regarding the reasonableness of Officer Rodden's actions. Because the Court is not a factfinder tasked with making credibility determinations or weighing evidence regarding excessive force, summary judgment as to Count II is denied.

c.     Summary Judgment is **Granted** as to Count VI (Negligence).

The Court grants summary judgment on Count VI because Plaintiff's arguments, persuasive as they may be regarding proof of gross negligence, do not match the allegations. In this way, the Court's ruling on this count rests on material differences of legal theories rather than facts. "[A] motion for summary judgment is framed by the allegations in the pleadings." *Comprehensive Med. Ctr., Inc. v. State Farm Mut. Auto. Ins.*, 690 F. Supp. 3d 1104, 1114 (C.D. Cal. 2023). "A plaintiff cannot allege one theory of liability in a complaint and then 'turn around and surprise [a defendant] at the summary judgment stage' with a different theory of liability. That is because '[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.'" *Id.* (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000)).

The Court reads the Complaint as alleging "simple" negligence. *See* ECF 1, at 10-11. To succeed on a negligence theory, a party must allege and prove: (a) a duty owed by the defendants to the plaintiffs; (b) a breach of that duty; and (c) injury proximately resulting from that breach. *Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 715 (D. Md. 2014). In Plaintiff's opposition to summary judgment, Plaintiff offers evidence of gross negligence. *See* Pl.'s MSJ

Opp'n, at 21-23.  Gross negligence differs in that it is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another [that] implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Nicholson v. Baltimore Police Dep't*, No. DKC 20-3146, 2023 WL 4549741, at *11 (D. Md. July 14, 2023).  That is, gross negligence requires an elevated mental state—intent or reckless disregard—not necessary for a simple negligence claim.  Because the negligence section of the Complaint does not invoke the defining elements of gross negligence, the Court must analyze the Motion using the pleadings rather than the summary judgment briefings.

In a simple negligence claim under state law, unlike with the federal excessive force and state battery claims, the Court must credit Defendants' qualified immunity arguments.[6]  Under Maryland law, a governmental actor enjoys a certain public official immunity for his or her non-malicious acts if it is determined that: (1) he is a "public official," and (2) his tortious conduct occurred while he was performing discretionary acts in furtherance of his duties.  *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 622 (Md. Ct. App. 1986) (quoting *James v. Prince George's Cnty.*, 288 Md. 315 (Md. Ct. App. 1980)).  Police officers receive public official immunity from suit for negligent acts performed during the course of their discretionary duties, which include arrests. *Houghton v. Forrest*, 412 Md. 578, 585 (Md. 2010).

Common law public official immunity does not apply to intentional torts, such as gross negligence.  *See Cox*, 296 Md. at 169 ("a police officer does not enjoy this [public official] immunity if he commits an intentional tort").  To survive summary judgment, and an assertion of public official immunity in defense of a negligence claim, Plaintiff must allege that the negligent

---

[6] Because qualified immunity issues dispose of the simple negligence claim, the Court will not address Defendants' contention that the evidence does not demonstrate that Officer Rodden deviated from the departmental policy when deploying his taser.  ECF 33-1, at 22.

use of excessive force was malicious.  *McCullough*, 2020 WL 836235 (D. Md. Feb. 20, 2020).

The briefing and oral arguments reflect counsel's understanding of this threshold.   Plaintiff

contends that while Officer Rodden had a duty to use reasonable care and not use excessive force,

the Defendant "grossly deviated from the customary and/or reasonable standard of care in

effectuating his duties."  Pl.'s MSJ Opp'n, at 22.  Claiming disputed material facts on this count,

Plaintiff offers the same differences at the heart of the excessive force claim.  For example, the

parties dispute whether, by the time Officer Rodden tased the Plaintiff a second time, Plaintiff (1)

had his hands open and extended upward in plain sight, (2) did not present an immediate threat to

Officer Rodden; and (3) Plaintiff immediately responded to Officer Rodden's verbal command.

Pl.'s MSJ Opp'n, at 22.  In urging for Count VI's survival, Plaintiff is correct that evidence

sufficient for excessive force is also sufficient for a gross negligence claim.  *Stutzman v. Krenik*,

350 F. Supp. 3d 366 (D. Md. 2018) (denying motion to dismiss because, *inter alia*, allegations

sufficient to state a claim based on unreasonable use of force and Fourth Amendment violation

also stated a claim for gross negligence).

But the fatal flaw here is not in the evidence but the framing in the Complaint.  From the

Court's review, no allegation in the negligence claim invokes malice or reckless disregard, such

that it may be construed as a "gross negligence" claim rather than "simple" negligence.

Amendment by briefing is not acceptable.  *Robinson v. Bowser*, No. 12-0301, 2013 WL 5655434,

at *3 (M.D.N.C. Oct. 16, 2013) ("Fourth Circuit courts have consistently concluded that a party

may not use a brief opposing summary judgment to amend a complaint.").  Because simple

negligence is defeated by public official immunity, summary judgment must be granted in favor

of Defendants*.  See McGowan v. Prince George's Cnty., Maryland*, 401 F. Supp. 3d 564, 571-72

(D. Md. 2019) (dismissing plaintiff's negligence claim in the summary judgment posture because

public official immunity barred the plaintiff's simple negligence claim in a police excessive force suit).

However, the Court recognizes that Plaintiff's change from simple to gross negligence does not, in this case, appear to prejudice the Defendants or be the result of gamesmanship by the Plaintiff.  The difference between "negligence and gross negligence is one of degree, and thus is also quintessentially a question of fact."  *Bank of Am., N.A. v. Jericho Baptist Church Ministries, Inc.*, No. PX-15-2953, 2019 WL 498818, at *7 (D. Md. Feb. 8, 2019), *aff'd*, No. 20-1725, 2022 WL 11112695 (4th Cir. 2022); *see Artis v. Cyphers*, 100 Md. App. 633, 652 (1994) ("[U]nless the facts are so clear as to permit a conclusion as a matter of law, it is for the trier of fact to determine whether a defendant's negligence conduct amounts to gross negligence.").  Because (1) Plaintiff has pursued excessive force and battery claims from the outset and (2) evidence of excessive force establishes gross negligence, the Court finds that permitting Plaintiff to proceed on a gross negligence theory does not necessarily create the sort of prejudice that flows from asserting, post-discovery, a liability theory unrelated to those at issue in discovery .  *See Corona v. Time Warner Cable, Inc.*, No. PSG-13-5521, 2014 WL 11456535, at *3 (C.D. Cal. Oct. 16, 2014) (citing *Coleman*, 232 F.3d at 1291) (while plaintiffs usually may not assert unpled theories for the first time at summary judgment, they "can avoid this bar by arguing that [d]efendants had sufficient notice of the theories prior to the close of discovery, either through the pleadings or otherwise, or that the Court should allow amendment of the pleadings to include new theories at the summary judgment stage.").  The court will allow Plaintiff an opportunity to amend Count VI of the Complaint to include gross negligence, if he so desires.

**B.**      **Defendants' Motion in Limine as to Plaintiff's Expert Testimony**

*1.      Legal standard for Expert Testimony*

Pursuant to Federal Rule of Evidence 104(a), a court is responsible for determining "preliminary questions concerning the qualification of a person to be a witness" and "admissibility of evidence," including the admissibility of expert testimony under Federal Rule of Evidence 702. *Maryland v. Dent*, No. ELH-18-360, 2019 WL 1795531, at *1 (D. Md. Apr. 23, 2019).  The party offering the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence.  *Id.* (citing, *inter alia*, *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 n.10 (1993)).

Courts apply several factors when determining whether expert testimony is admissible under Federal Rule of Evidence 702 and *Daubert*.  *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (citations omitted) (explaining in detail the *Daubert* standard for expert testimony, specifically regarding Rule 702 which "permits expert testimony if that testimony is (1) helpful to the jury in understanding the evidence or determining a fact at issue, (2) based on sufficient facts or data, (3) the product of reliable principles and methods, and (4) the product of a "reliabl[e] appli[cation] of th[ose] principles and methods to the facts of the case.").  An expert is qualified to offer testimony when she or he has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999).  To fulfill this function, the expert's opinion must be both relevant and reliable.  *Sardis*, 10 F.4th at 281; *see Maryland Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998) ("All *Daubert* demands is that the trial judge make a preliminary assessment of whether the proffered testimony is both reliable . . . and helpful.").

Of importance here, testimony that states a legal conclusion is not admissible.  *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 512 (D. Md. 2014); *see also United States v. Offill*, 666 F.3d 168,

175 (4th Cir. 2011) (internal citation omitted) (such testimony "does not help the jury . . . because it supplies the jury with no information other than the witness's view of how the verdict should read."); Fed. R. Evid. 704, advisory committee's note ("Opinions which would merely tell the jury what result to reach" are inadmissible). Additionally, "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006).

> 2.  *Defendants' Motion in Limine to Exclude Plaintiff's Expert, Mr. Hodge, is* <u>**Granted**</u> *to the extent he testifies as to conclusions of law and is otherwise* <u>**Denied**</u>.

Defendants move for exclusion of certain testimony they expect Plaintiff to present through a law enforcement expert, Michael Hodge. Under the Federal Rules of Evidence, a district court is required to be a "gatekeeper, [but] a district court is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019) (internal citation omitted). Plaintiff expects Mr. Hodge to opine:

> [1] on the standards of care police officers use of force that include the use of [tasers;]
>
> [2] on Officer Rodden's deployment of his taser as excessive and unreasonable against a compliant civilian; [and]
>
> [3] that the excessive and unreasonable Use of Force as a result of Officer Rodden deploying his taser, falls below the standards of care in the area and field of Law Enforcement and Police Procedures practices and is the likely cause of harm against the Plaintiff.

*Id.* at 3. Defendants contend that the witness offers conclusory and unexplained opinions, based on "his own selective" view of evidence, that cannot assist the factfinder in this case. ECF 34-1, at 3; ECF 40, at 2. Plaintiff responds that the opinions are credible, reliable, helpful—and, ultimately, admissible—in that the witness relies on his experience, education, and training related to "use of force" protocols and considerations for police officers. ECF 38-1, at 5. However,

Plaintiff's general summary of law on expert admissibility did not address the details of Mr. Hodge's opinion.

Courts presume expert testimony to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror. *See Persinger v. Norfolk & Western Railway Co.*, 920 F.2d 1185, 1188 (4th Cir.1990) (testimony about how difficult it is to lift heavy things is not "helpful" and is thus excludable). "Even then, the erroneous admission of such testimony is usually harmless: an astronomer's explanation that the days are longer in the summertime may not assist the jury, but it is also not likely to cause an erroneous finding of fact." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir.1993). "Trouble is encountered only when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986).

In *Kopf*, the Fourth Circuit stated that:

> The facts of every case will determine whether expert testimony would assist the jury. Where force is reduced to its most primitive form—the bare hands—expert testimony might not be helpful. Add handcuffs, a gun, a slapjack, mace, or some other tool, and the jury may start to ask itself: what is mace? what is an officer's training on using a gun? how much damage can a slapjack do? Answering these questions may often be assisted by expert testimony.

993 F.2d at 379; *see also Wallace v. Poulos*, No. DKC-08-0251, 2011 WL 13223693, at *2 (D. Md. Apr. 4, 2011) ("[c]ourts have repeatedly noted that the admissibility of expert testimony turns on the particular facts and circumstances of the case[.]").

"Whether an officer has used excessive force is judged by a standard of objective reasonableness, which requires a jury to determine 'whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force.'" *Clem v. Corbeau*, 98 F. App'x 197, 200-01 (4th Cir. 2004) (quoting *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir.1996)). Generally, the "objective reasonableness" standard may be comprehensible

to a lay juror and require no expert assistance.  *Kopf*, 993 F.2d at 378.  However, in an excessive force case, the relevant standard of conduct used to assess reasonableness "is not defined by the generic—a reasonable person—but rather by the specific—a reasonable officer."  *Id.*  As a result, the reasonableness inquiry in an excessive force case can involve "specialized knowledge," which an expert witness can assist the jury in understanding.  *Clem*, 98 F. App'x at 201 (quoting *Kopf*, 993 F.2d at 378); *see also* Fed. R. Evid. 702.

A review of cases in this circuit demonstrates that, as a general matter, expert testimony in excessive force cases is likely admissible where a witness addresses police practices and standards of care.  This trend aligns with the role of expert witnesses in providing helpful testimony concerning specialized knowledge and experience.  In *Kopf*, the Fourth Circuit held that a district court had abused its discretion in excluding expert testimony "as to the prevailing standard of conduct for the use" of two "specialized tool[s]" of police work: police dogs (the training and use of which were held to be "obscure skills") and slapjacks.  993 F.2d at 379.  In the context of specialized knowledge for tasers, other courts within the Fourth Circuit have found that an expert's opinion regarding the use of a taser is proper.  *See, e.g.*, *Cook v. Riley*, No. 11-0024, 2012 WL 2280619, at *3 (M.D.N.C. June 18, 2012) (noting that the expert "could provide testimony about standard practices regarding the use of TASERs that the trial judge might find helpful to the jury").  The Court agrees with *Cook* that a taser "represents a more specialized tool than a club (or perhaps even a gun) and thus [the expert] may offer information about TASERs themselves, including how they work and what kind of effect they have on a subject, that the trial judge deems helpful to the jury."  *Id.*

However, *Kopf* did not establish a "blanket rule that expert testimony is generally admissible in excessive force cases."  *Id.* at 378.  Courts prevent testimony that crosses the line

from specialized knowledge to supplanting the factfinder's role of determining reasonableness. *See Clem*, 98 F. App'x at 200 (excluding testimony when the expert's only relevant testimony involved opinions on the interpretations of the contested facts (i.e., the reasonableness of the defendant's use of force in shooting the plaintiff) and did not offer any testimony on specialized knowledge of obscure skills).  Instead of assisting the jury, such expert opinion can risk "supplant[ing] a jury's independent exercise of common sense" and its role of determining the facts.  *Id.* (citation omitted).

For these reasons, courts in this district have excluded expert testimony that ventures beyond standards of care and wades into reasonableness of the police force at issue.  For example, in *Wallace*, Judge Chasanow prevented Plaintiff's expert, a commanding officer of the Baltimore Police Department, from testifying on the reasonableness of the defendant officers' (1) use of force and arrest of the plaintiff, (2) entry into the plaintiff's home, (3) seizure of the plaintiff's daughter, and (4) supervision of the defendant officers.  *Wallace*, 2011 WL 13223693, at *1.  The Court found that the expert's report and testimony "read[] like a closing argument . . . and depend[ed] too much on whose version of events one believes.  The jury [will be] instructed on the standard for police behavior and will be able to decide the issue of its reasonableness without expert testimony."  *Id.*  Thus, the proposed testimony did "not stem from his knowledge of obscure skills and would not assist the jury in its role of determining facts."  *Id.* at 2.

In *Jones v. Allen*, Judge Xinis directed Plaintiff to "take care to frame [the expert's] opinion in terms of the propriety or impropriety of [d]efendants' conduct from the perspective of a reasonably well-trained and experienced officer, and refrain from opining as to whether the officers' conduct was 'reasonable' or 'unreasonable.'"  No. PX-15-1173, 2016 WL 9443772, at *5 (D. Md. Oct. 24, 2016) (quoting *United States v. Perkins*, 470 F.3d 150, 159 (4th Cir. 2006)).

Appropriate expert testimony included discussing certain actions in the case that "deviated from generally accepted police practices." *Id.* at *5. This careful framing[7] ensured that the expert's testimony was "more in line with permissible expert police practices and use of force testimony." *Id.*; *see also Perkins*, 470 F.3d at 159 (affirming admission of expert testimony because opinions were "not couched in terms of objective reasonableness" and instead focused on whether the conduct violated established police practices and that the expert saw "no law enforcement or legitimate reason" for the defendant officers conduct).

The Court finds the parameters reflected in *Wallace* and *Jones* instructive. Mr. Hodge may not testify to "pure legal analysis, such as quotations from the Supreme Court's opinion in *Graham*[.]" *See* 34-4, Hodge Dep., Tr.74:17-21, 75:1-7 (noting that he considered *Graham*'s language in forming certain opinions). Following *Kopf*, to the extent that Mr. Hodge seeks to testify regarding the reasonableness of Officer Rodden's actions, the Court finds such statements beyond the scope of permissible expert testimony. *See* 993 F.2d at 379; *Perkins*, 470 F.3d at 159 (explaining that testimony, to be helpful to the jury, must "avoid the baseline legal conclusion of reasonableness."). However, the Court will not, as Defendants' request, exclude the entirety of Mr. Hodge's potential testimony. He may, if offered, be permitted to "address customary police practice," but he cannot assert "legal conclusions" that Defendant Officer Rodden violated Plaintiff's rights.

The Court notes that this issue may be subject to further consideration based on the evidence and testimony presented at trial. At this juncture, however, the Motion in Limine is

---

[7] In *Jones*, the plaintiff intended to offer expert testimony that, "considering the totality of the circumstances, the [defendant] officers' discharging firearms . . . was reckless and inconsistent with law, [Prince George's County police department] policies/General Orders, and accepted police practices." *Jones*, 2016 WL 9443772, at *5.

GRANTED only to the extent Plaintiff offers expert testimony on whether force used in this case was objectively reasonable or excessive as a matter of law.  The Motion is otherwise DENIED.

## III.    CONCLUSION

For the reasons stated herein, the Motion for Summary Judgment (ECF 33) is GRANTED in part and DENIED in part.  Counts III, IV, V, VI are dismissed.  Plaintiff may seek amendment of his negligence claim, consistent with the rulings herein, within twenty-one (21) days of this Opinion.  As to Defendants' Motion in Limine (ECF 34), it is GRANTED in part and DENIED in part.


Date: August 26, 2024                                   _____/S/_____
                                                        Charles D. Austin
                                                        United States Magistrate Judge